**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mitchell J. Gold, ) | No. 09-318-PHX-JAT |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Merrill Lynch & Company, Inc., ) | |
| Defendant. ) | |

Pending before the Court is Defendant's Motion to Dismiss (Doc. #6). The Court now rules on the motion.

## I. BACKGROUND

Prior to his marriage to Laura C. Gold on October 21, 1995, Plaintiff Mitchell Gold opened a retirement account with Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S") that was the sole and separate property of Mr. Gold. Compl. at ¶¶ III-IV. Though Ms. Gold was not authorized to access Mr. Gold's account at MLPF&S, Plaintiff's Complaint alleges that Ms. Gold withdrew more than $335,920 from the account. Compl. at ¶¶ V-VI. These withdrawals occurred in five separate wire fund transfers from 2005 to January 2007. Compl. at ¶ XXIII. However, Mr. Gold claims that he did not discover these withdrawals until the last week of January 2008. Compl. at ¶ IX. In February 2008, Mr. Gold notified MLPF&S that Ms. Gold had completed these withdrawals from the MLPF&S account by forging Mr. Gold's signature. Compl. Ex. 2. Mr. Gold verified these

forgeries through documents obtained from MLPF&S and has requested a credit to his account for all funds disbursed to Ms. Gold. Compl. Exs. 3, 4. MLPF&S has not reimbursed Mr. Gold as requested. Compl. at ¶ XIX.

Mr. Gold filed the present suit on January 23, 2009 in the Superior Court of the State of Arizona, claiming breach of contract and negligence by MLPF&S. Compl. at ¶¶ XX-XXXIV. MLPF&S filed a notice of removal of the case to the United States District Court for the District of Arizona on February 17, 2009, and, on February 23, 2009, moved to dismiss with prejudice Mr. Gold's Complaint for failure to state a claim (Docs. #1, 6).

## II. ANALYSIS AND CONCLUSION

### A. Defendant's 12(b)(6) Motion to Dismiss

Defendant has moved this Court to dismiss Plaintiff's Complaint for failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6). A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (citing *Buckey v. County of Los Angeles*, 957 F.2d 652, 654 (9th Cir. 1992)). When analyzing a complaint under this standard, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). Additionally, a motion to dismiss under 12(b)(6) is, "viewed with disfavor and is rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997) (internal quotations and citations omitted).

### B. Evidence Outside the Complaint

Defendant has attached a "notice of confirmation of account changes" and account statements as exhibits to its Motion. Def. Exs. A-E. However, absent specific exceptions, the Court will not consider evidence or documents beyond the complaint in the context of a 12(b)(6) Motion to Dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (amended decision). When a party files affidavits and other evidence in support of a 12(b)(6) Motion to Dismiss, the Court may convert the motion to a FED.R.CIV.P. 56 motion for summary judgment. FED.R.CIV.P. 12. However, if a party

objects, generally the Court will not grant a motion for summary judgment before discovery can be completed. *See generally* FED.R.CIV.P. 56(f); *THI-Hawaii, Inc. v. First Commerce Fin. Corp.*, 627 F.2d 991, 994 (9th Cir. 1980).

There are two exceptions to the general rule cited above from *Hal Roach Studios*. 896 F.2d at 1550. "First, a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotations and citations omitted). "If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity ... is not contested and the plaintiff's complaint necessarily relies on them." *Id.* (internal quotations and citations omitted). "Second, under FED. R. EVID. 201, a court may take judicial notice of matters of public record." *Id.* at 688-689 (internal quotations and citations omitted).

Defendant argues that the Court may consider the account statements attached to its Motion under the first exception, or the "incorporation" doctrine. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (affirming dismissal under 12(b)(6) where portions of website not expressly mentioned in complaint were attached to defendant's motion). Conversely, Plaintiff argues in its Response that consideration of the account statements require that the Motion be converted to a Rule 56 motion for summary judgment, though Plaintiff does not address the applicability of the aforementioned exceptions.

This Court agrees with the Defendant's argument and finds that the account statements may be properly considered under the incorporation doctrine without converting the Motion to a motion for summary judgment. Plaintiff does not contest the authenticity of the account statements in his Response. Furthermore, the documents attached to Plaintiff's Complaint only establish a possible attempt by Ms. Gold to transfer money out of Mr. Gold's account by forging his signature; they do not establish that such transfers ever actually occurred. Therefore, in order to establish injury on which to base his claims, Plaintiff's Complaint "necessarily relies" on demonstrating that the allegedly forged documents led to actual withdrawals from his MLPF&S account. The account statements provided by

Defendant in Def. Exs. A-E do precisely that and thus satisfy the requirements of the incorporation doctrine.

**C. Article 4A of the U.C.C. Governs Plaintiff's Claims**

Defendant has moved to dismiss the allegations regarding the five disputed withdrawals pursuant to A.R.S. § 47-4A505, which is adopted from U.C.C. § 4A-505 and provides the following:

> If a receiving bank has received payment from its customer with respect to a payment order issued in the name of the customer as sender and accepted by the bank and the customer received notification reasonably identifying the order, the customer is precluded from asserting that the bank is not entitled to retain the payment unless the customer notifies the bank of the customer's objection to the payment within one year after the notification was received by the customer.

Defendant argues that this statute of repose applies to this case because Plaintiff did not notify Defendant of the unauthorized transfers until February 2008, which was more than one year after the last withdrawal by Ms. Gold in January 2007.[1] Thus, Defendant argues, § 47-4A505 bars all claims by Plaintiff that seek reimbursement from Defendant for the unauthorized transfers.

Plaintiff, however, argues that § 47-4A505 does not apply because the unauthorized withdrawals do not fall under Article 4A of the U.C.C. and because MLPF&S cannot be properly characterized as a "bank" under the language of the statute.[2] As discussed below, both of Plaintiff's arguments regarding the applicability of Article 4A fail.

First, the unauthorized transfers all constituted funds transfers under Article 4A of the U.C.C. Plaintiff alleges in his Complaint that Ms. Gold fraudulently transferred nearly

---

[1] Defendant originally asserted in its Motion that Plaintiff's claims were barred by A.R.S. § 47-4406. However, both in its Reply and at oral argument, Defendant acknowledged that A.R.S. Title 47, Chapter 4A more properly applies to the funds transfers in question in this case.

[2] Plaintiff has also asserted in his Supplemental Response that Article 8 of the U.C.C. applies to this case because the account in question may have, at some point, held investment securities owned by Plaintiff. However, Plaintiff's Complaint clearly alleges unauthorized funds transfers, which are governed by Article 4A.

1  $319,000 from Plaintiff's MLPF&S account to other accounts that Ms. Gold controlled.
2  Other documents supplied by both parties identify the first four of these withdrawals as wire
3  transfers. Compl. Ex. 4; Def. Exs. B-D. Also, the Complaint refers to all five withdrawals
4  as "transfers" of "funds." Compl. at ¶ VIII. The Official Comment to U.C.C. § 4A-102
5  states that "[a]rticle 4A governs a specialized method of payment referred to in the Article
6  as a funds transfer but also commonly referred to in the commercial community as a
7  wholesale wire transfer." Furthermore, Arizona courts have acknowledged that Article 4A
8  applies to wire transfers. *See Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 488
9  (Ariz. App. 2002) ("Article 4A was intended to provide a new and controlling body of law
10 for those wire transfers within its scope."). Thus, the Court finds that the five unauthorized
11 funds transfers alleged in the Complaint are of the type governed by Article 4A of the
12 U.C.C., as adopted by Chapter 4A of Title 47 of the Arizona Revised Statutes.

13      Second, in light of the clear applicability of Article 4A to funds transfers, the Court
14 does not find Plaintiff's attempts to exclude MLPF&S from the U.C.C. definition of a bank
15 persuasive.[3] A.R.S. § 47-4A105 of the Arizona Revised Statutes defines a bank as "a person
16 engaged in the business of banking and includes a savings bank, savings and loan
17 association, credit union and trust company." Like the language of § 47-4A505, this
18 definition is adopted from the U.C.C. U.C.C. § 4A-105.

19      Defendant, a brokerage firm, does not fit into any of the enumerated examples.
20 However, as stated in the Official Comment to U.C.C. § 4A-105, that section's definition of

---

[3] First, the Court finds Plaintiff's arguments based on Arizona's banking regulation statute, A.R.S. § 6-201(B), to be without merit. That statute begins with the phrase, "For the purposes of this section. . . ," which clearly indicates no legislative intent that it must be applied to statutes in other sections. Additionally, this Court does not find Plaintiff's argument based on the absence of MLPF&S from the Arizona Department of Financial Institutions' list of state charted banks persuasive. The legislature could not have intended the definition of bank under § 47-4A105 to be so narrow as to only include state chartered banks, as a cursory review of that list reveals the absence of multiple businesses currently operating in Arizona that are undoubtedly in the business of banking. *See* http://www.azdfi.gov (follow "List of Licensees" hyperlink; then follow "Banks (State Chartered)" hyperlink). The Court viewed this web page pursuant to FED. R. EVID. 201.

a bank "reflects the fact that many financial institutions now perform functions previously restricted to commercial banks, including acting on behalf of customers in funds transfers." This comment alone strongly implies that MLPF&S, which certainly qualifies as a financial institution, should be deemed a bank for purposes of the U.C.C. Moreover, at least one other jurisdiction has applied Article 4A to wire transfers conducted by MLPF&S. *See Covina 2000 Ventures Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 06 Civ. 15497 (DLC), 2008 WL 1821738 (S.D.N.Y. Apr. 21, 2008) (granting summary judgment for Merrill Lynch on claims that were barred by U.C.C. § 4A-505). This Court thus finds no compelling reason to exclude MLPF&S from the definition of a bank in Article 4A.

Having determined that the withdrawals in question were in the form of funds transfers issued by a bank, the Court finds that Article 4A of the U.C.C., as adopted by the Arizona legislature in Chapter 4A of Title 47 of the Arizona Revised Statutes, governs Plaintiff's claims. § 47-4A204 specifically addresses unauthorized funds transfers. It states that if a bank accepts an unauthorized payment order, "the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund." § 47-4A204. It further states that the customer is not entitled to interest if the customer does not notify the bank of the "relevant facts within a reasonable time not exceeding ninety days after the date the customer received notification from the bank that the order was accepted or that the customer's account was debited with respect to the order." *Id.* Additionally, as described above, § 47-4A505 completely bars the customer's recovery if more than a year has elapsed from the time the customer received notification.

**D. Plaintiff's Contract Claim Cannot be Dismissed Under A.R.S. § 47-4A505**

The final barrier proposed by Plaintiff to the application of § 47-4A505 to this case revolves around whether Plaintiff received proper notification of the funds transfers, as is required by § 47-4A505. The Official Comment to U.C.C. § 4A-204 states that, while that section "is designed to encourage a customer to promptly notify the receiving bank that it has

- 6 -

accepted an unauthorized payment order, . . . [t]here is no intention to impose a duty on the customer that might result in shifting loss from the unauthorized order to the customer." This goal must be considered when determining whether a customer has properly "received notification" under both § 47-4A204 and § 47-4A505. While there is no Arizona case law on this issue, the highest court in one state held that the language of the statutes implies that the customer must have actual notice. *See Regatos v. N. Fork Bank*, 5 N.Y.3d 395 (2005) (holding "the one-year statute of repose [in 4A-505] . . . begin[s] to run when the customer receives actual notice of the improper transfer.").

This Court finds that the requirement of actual notice best comports with both the language of the statutes and the Official Comments of the U.C.C.[4] Here, the Defendant asserts that it mailed account statements identifying the questionable transfers to Plaintiff shortly after each of those transfers was completed. It attempts to support this assertion with copies of the statements showing the first four of the transfers, along with a change-of-address confirmation form to establish that the statements were all sent to Plaintiff's proper addresses. Def. Exs. A-E. Plaintiff, however, alleges in his Response that there are factual issues regarding whether the statements were made reasonably available or ever received by Plaintiff.

The Court finds that there is not sufficient evidence at this point that the Plaintiff had actual notice of the unauthorized withdrawals. Defendant has only provided statements for four of the five transfers. Those statements alone are not sufficient to support a presumption

---

[4] In its Motion, Defendant states that "[t]he modern U.C.C. case law of other jurisdictions is virtually unanimous in holding that, once account statements are mailed to the account holder's proper address, the risk of nonreceipt falls on the account holder and interception of the statements by a wrongdoer does not relieve the account holder of the duty to examine the statements and report unauthorized items to the bank." *Stowell v. Cloquet Co-op Credit Union*, 557 N.W.2d 567, 571-572 (Minn. 1997) (citing cases from several states). However, the Court finds that this interpretation applies only to the language used in U.C.C. § 4-406 (statute of repose triggered when statements are "made available to the customer"), and not to the language used in U.C.C. § 4A-505 (statute of repose triggered when customer "received notification" of unauthorized transfers).

1  that the Plaintiff received the statements and thus had actual notice of the first four transfers.
2  Additionally, there is no evidence that Plaintiff received notification of the fifth transfer.
3  Without additional evidence to support Defendant's assertions that Plaintiff received
4  notification of all five transfers, the Court cannot properly determine when the § 47-4A505
5  statute of repose began to run on each of the transfers. Therefore, at this time, Plaintiff's
6  contract claim cannot be dismissed based on the statute of repose in § 47-4A505.

### E. Plaintiff's Negligence Claim is Precluded

Plaintiff has also claimed that Defendant was negligent in allowing the unauthorized transfers. Defendant, however, argues that the economic loss doctrine bars Plaintiff's negligence claims. "The economic loss doctrine precludes a party from recovering in tort if the party has suffered only an economic loss and, therefore, should pursue its remedy in contract instead of in tort." *Hughes Custom Bldg., L.L.C. v. Davey*, 2009 WL 1260171, ¶ 9 (Ariz. Ct. App. May 7, 2009). Courts should "determine, on a case-by-case basis, whether the claim brought properly sounds in tort or in contract." *Id.* at ¶ 15. However, courts in the Ninth Circuit have generally applied the doctrine to cases governed by the U.C.C. *See Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477, 480-81 (9th Cir. 1995) (finding that plaintiff's negligence claim was barred by the economic loss doctrine where the parties' contract was governed by the U.C.C.); *Sw. Pet Prods., Inc. v. Koch Indus.*, 89 F. Supp. 2d 1115, 1128-29 & n.8 (D. Ariz. 2000) (the application of the U.C.C. triggers the policies of the economic loss doctrine), *aff'd in part, rev'd in part on other grounds*, 32 F. App'x 213 (9th Cir. 2002). Furthermore, the Official Comment to U.C.C. § 4A-102, which describes the subject matter of Article 4A, states the following:

> The rules . . . are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of [Article 4A]. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.

The Court thus finds that Plaintiff's negligence claim is precluded. First, Plaintiff alleges only economic losses in his Complaint. Second, Plaintiff's Complaint alleges that Defendant breached duties related only to the payment of unauthorized transfers. As

discussed above, Article 4A of the U.C.C. specifically addresses such unauthorized transfers and provides an exclusive remedy for them. The Court finds that the duties alleged by Plaintiff would be inconsistent with those stated in Article 4A. Plaintiff therefore may not proceed with his negligence claim. He may, however, proceed with his contract claim, which is governed by Article 4A of the U.C.C., as adopted by the Arizona Revised Statutes.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. #6) is **GRANTED** in part and **DENIED** in part consistent with this Order.

DATED this 14th day of July, 2009.

*/s/ James A. Teilborg*
James A. Teilborg
United States District Judge